**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

MOLLY LO,

Plaintiff,

v.

NANCY A. BERRYHILL[1], Acting Commissioner of Social Security,

Defendant.

Case No.: 1:16-cv-0610 - JLT

ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)

ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF MOLLY LO AND AGAINST DEFENDANT NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY

Molly Lo asserts she is entitled to disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the record and seeks judicial review of the decision to deny her applications for benefits. Because the ALJ erred in evaluating the medical record, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

Plaintiff filed her applications for benefits on April 25, 2012, alleging disability beginning on January 1, 2012. (Doc. 9-3 at 20) The Social Security Administration denied Plaintiff's applications at both the initial level and upon reconsideration. (*See generally* Doc. 9-4) After requesting a hearing,

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Nancy A. Berryhill for her predecessor, Carolyn W. Colvin, as the defendant.

Plaintiff testified before an ALJ on July 24, 2014. (Doc. 9-3 at 36) The ALJ determined Plaintiff was not disabled and issued an order denying benefits on September 16, 2014. (*Id.* at 17-29) The Appeals Council denied Plaintiff's request for review of the decision on August 25, 2015. (*Id.* at 2-4) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security ("Commissioner").

**STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

**DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v.*

*Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

**ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity ("RFC") to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A. Relevant Medical Evidence**[2]

In May 2011, Plaintiff went to the Kings Winery Medical Clinic, complaining of pain and "feeling down." (Doc. 9-10 at 35) Plaintiff reported she "was feeling depressed about 5 years and it got worse gradually," and had feelings of hopelessness and worthlessness. (*Id.* at 34) Plaintiff said she "became withdrawn" and "had no motivation to do things." (*Id.*) Plaintiff reported hearing voices and feeling suicidal, though she did not have suicidal ideations at the appointment. (*Id.*) Further, Plaintiff said she "had difficulty [with] concentration and remembering things." (*Id.*) During the examination, she appeared sad and tearful. (*Id.*) Plaintiff was diagnosed with major depressive disorder and received prescriptions for Prozac and Zyprexa. (*Id.*)

Treatment notes from Kings Winery indicate that at a follow-up appointment in August 2011, Plaintiff reported she "took medications regularly, however she was still feeling depressed." (Doc. 9-10 at 33) As a result, the doctor increased the dosage of her prescription for Prozac. (*Id.*) Plaintiff's medications were altered again in October 2011, when she reported that she took the medication "regularly," but "was feeling hopeless, worthless…[and] tired." (*Id.* at 29) The following month,

---

[2] While the Court has reviewed the entirety of the medical record, Plaintiff challenges the evaluation of medical evidence related to her mental impairments. Accordingly, the summary excludes any evidence related to her physical impairments.

Plaintiff reported that "she was still having insomnia." (*Id.* at 27) However, her mood was normal, she had a pleasant demeanor, and she did not have any hallucinations. (*Id.*)

Plaintiff had a comprehensive assessment for services from Fresno County Department of Behavioral Health on January 12, 2012. (Doc. 9-10 at 5-14) Plaintiff reported she had "frequent nightmares about unknown people who will hurt [her]," heard voices, and "saw black shadows." (*Id.* at 5) Plaintiff stated she had "problems staying asleep and [awoke] easily due to the frequent nightmares." (*Id.* at 9) She reported she was on psychotropic medications that were prescribed by a psychiatrist from Kings Winery Clinic. (*Id.* at 8) In addition, Plaintiff said she had "poor memory and concentration." (*Id.* at 12) Doan Truong, a social worker, observed that Plaintiff appeared "[d]epressed, irritable, … and worried," and "[s]he cried several times during the interview." (*Id.* at 9, 12) Mr. Truong believed Plaintiff had fair immediate and short term memory, poor insight, poor judgment, and fair abstraction. (*Id.* at 10) Mr. Truong recommended Plaintiff be admitted to the County's Prevention Early Intervention program, through which Plaintiff began meeting with a social worker. (*See id.* at 13, 19)

Dr. Helen Patterson completed a mental residual functional capacity assessment for Plaintiff's current abilities on July 14, 2012. (Doc. 9-4 at 41-43) Dr. Patterson opined Plaintiff was "[n]ot significantly limited" with the ability to understand, remember, and carry out "very short and simple instructions," but was "[m]oderately limited" with detailed instructions. (*Id.* at 41-42) She believed that Plaintiff had moderate limitations with maintaining attention and concentration, completing a normal workday and workweek, interacting appropriately with the public, and getting along with coworkers or peers. (*Id.* at 42)

On August 7, 2012, Plaintiff was admitted to the hospital on a 5150 hold, "as a danger to self and danger to others." (Doc. 9-11 at 31, 32) Plaintiff said "she [was] very depressed and suicidal and that she [needed] protection… in order to keep herself safe." (*Id.* at 33) Dr. Dwight Sievert observed that Plaintiff was "oriented and able to accurately name the day, date and hospital." (*Id.* at 34) In addition, Dr. Sievert opined Plaintiff's "[i]nsight, judgment and impulse appear[ed] to be reasonably well preserved with the exception of impulse control in the area of self harm." (*Id.*) Plaintiff was discharged on August 10, when Plaintiff no longer was saying she was dangerous to herself or others, and appeared "calm, reasonable and… genuine in expression of safety." (*Id.* at 37)

In December 2012, Plaintiff had Mental Health Assessment with Fresno County. (Doc. 9-11 at 41-45) Plaintiff reported she was "not motivated to do anything" and she would "sit and watch tv all day long." (*Id.* at 41) Kong Yang, a MSW student intern, observed that Plaintiff appeared anxious/ tense, worried/fearful, and sad/depressed. (*Id.* at 44) Further, Plaintiff had illogical thought process and poor attention and concentration. (*Id.*)

Plaintiff was admitted to Kaweah Delta Mental Health Hospital on a Welfare and Institutions Code section 5150 hold on January 8, 2013. (Doc. 9-11 at 50) Plaintiff admitted "to feeling depressed, hopeless, worthless and [had] suicidal ideation with a plan to either cut her wrists or[] her neck and… plans of hanging herself." (*Id.*) The following day, she appeared "depressed, withdrawn/isolated" and had a decreased level of attention. (*Id.* at 52) Plaintiff's insight and judgment were poor, but her thought process was "[l]inear and logical for short conversations." (*Id.*) She remained hospitalized until January 12, 2013. (*Id.* at 64)

Dr. M. Salib completed a mental residual functional capacity assessment for Plaintiff's current abilities on March 20, 2013. (Doc. 9-5 at 25-27) Dr. Salib opined Plaintiff had understanding and memory limitations, but was "[n]ot significantly limited" with the ability to understand, remember, and carry out "very short and simple instructions." (*Id.* at 26) In addition, Dr. Salib determined Plaintiff had moderate concentration and attention limitations, and moderate limitations with social interaction. (*Id.* at 26-27) Dr. Salib concluded: "The claimant retains adequate ability to complete tasks, to follow instructions w/o additional assistance, to maintain adequate attention, concentration, and persistence, and to work at adequate pace to sustain a normal workday and workweek, as her physical condition permits." (*Id.* at 27)

Dr. Maximo Parayno performed a psychiatric evaluation on April 3, 2014. (Doc. 9-12 at 90-93) Dr. Parayno observed that Plaintiff "was disoriented and did not know the day of the week, month, year, her complete home address, home phone, and even her own date of birth." (*Id.* at 92) He tested Plaintiff's memory by giving her a 7-digit number, and Plaintiff "was unable to recall any of the numbers." (*Id.*) In addition, Plaintiff "was asked to do the serial sevens test involving subtracting 7 from 100 serial and [was] unable to do so." (*Id.*) Dr. Parayno opined that "her inability to perform both the forward digit span and serial sevens tests indicated impaired concentrations and attention

span." (*Id.*) Because Plaintiff was unable to identify the birthdates of any of her children, Dr. Parayno opined Plaintiff had an "impaired remote memory." (*Id.*) Likewise, when Plaintiff "was given 5 items to recall such as bread, milk, beef, grapes, and corn,… she remembered none of the 5 items" after 2 minutes, "which indicated impaired recent memory." (*Id.*) Dr. Parayno opined Plaintiff's insight and judgment were "fair" because she "realizes she has a mental disorder and needed treatment." (*Id.*) He found Plaintiff's "cognitive parameters such as memory, concentration and attention span appeared impaired." (*Id.*) Dr. Parayno concluded Plaintiff "appear[ed] disabled from the psychiatric evaluation and unable to engage in any substantial gainful activity." (*Id.* at 93)

On April 7, 2014, Dr. Parayno completed a mental residual functional capacity statement. (Doc. 9-12 at 94-97) He opined Plaintiff had "impaired memory, concentration & attention span." (*Id.* at 97) Dr. Parayno indicated Plaintiff's impairments precluded her ability to understand and remember very short and simple or detailed instructions, maintain attention and concentration, perform activities within a schedule, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruption "for 15% or more of an 8-hour workday." (*Id.* at 95-96) He opined that Plaintiff was likely to be off task for "more than 30%" of a workday due to her physical and mental limitations. (*Id.* at 95)

La Hang, a social worker and mental health clinician, completed a mental residual functional capacity form on May 13, 2014. (Doc. 9-12 at 103-106) She opined Plaintiff was moderately limited with the ability to understand, remember, and carry out short and simple instructions. (*Id.* at 104) According to Ms. Hang, Plaintiff had marked limitations with the ability to understand, remember, and carry out detailed instruction, noting that Plaintiff "present[ed] w/ poor attention/concentration and slow processing as evidence[d] by preoccupied worries, poor memory, and negative self-talk." (*Id.*) In addition, she believed Plaintiff exhibited "impaired judgment and irrational thought process as evidence[d] by past suicidal attempts and ideations." (*Id.*) Further, Ms. Hang opined Plaintiff had marked ability to respond to changes in the workplace, to set goals or make plans independent of others, to accept instructions, to get along with co-workers or peers, to interact with the general public, or to complete a normal workday while maintaining a consistent pace. (*Id.* at 104-105)

///

**B. Administrative Hearing Testimony**

Plaintiff testified with the assistance of an interpreter at the hearing on July 24, 2014. (Doc. 9-3 at 37) She stated that she felt scared, worried, and depressed, and she had crying spells "about two or three times per week." (*Id.* at 47) In addition, Plaintiff said that "about two or three times per week" she heard voices calling her name. (*Id.* at 54) She also reported that she would see shadows and feel like someone was standing close beside her, when no one was there. (*Id.* at 55)

Plaintiff said her "depression causes… memory loss, and [makes her] unable to recognize things and organize things," and to not complete tasks. (Doc. 9-3 at 46) She reported that she was taking medication for depression, which helped "[j]ust a little bit." (*Id.* at 45) In addition, Plaintiff reported she went to therapy once a week to help with her symptoms. (*Id.* at 47)

She stated that each day she would "only take …medication and stay home and lie down." (Doc. 9-3 at 53) Plaintiff explained that she would wake up, clean herself, brush her teeth, and take her medication. (*Id.*) She reported that she did not make her bed or do any chores around the house do to her physical pain. (*Id.*)

**C. The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of January 1, 2012. (Doc. 9-3 at 22) At step two, the ALJ found Plaintiff's severe impairments included: "carpal tunnel syndrome bilaterally, and affective disorder." (*Id.*) At step three, the ALJ determined Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing. (*Id.* at 22-23) Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 426.967(b), except she should never climb ladders, ropes, or scaffolds, or work at unprotected heights or around moving mechanical parts. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; frequently bilaterally handle, finger, and feel. In addition, she is limited to performing simple routine repetitive tasks, and using judgment related to simple work related decisions, and capable of occasional interaction with coworkers and the public.

(*Id.* at 24) With these limitations, the ALJ concluded Plaintiff was not able to perform any past relevant work. (*Id.* at 27) However, the ALJ concluded, "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

national economy that the claimant can perform." (*Id.* at 28) Therefore, the ALJ found Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 29)

**DISCUSSION AND ANALYSIS**

Plaintiff contends the ALJ erred in rejecting the opinion of Dr. Parayno. (Doc. 15 at 15-21) On the other hand, the Commissioner contends the ALJ "gave good reasons" for rejecting the opinion. (Doc. 22 at 6 [emphasis omitted]; *see also id.* at 5-9). According, Defendant contends the ALJ's decision is "free of reversible legal error." (*Id.* at 11)

**A. ALJ's Evaluation of the Medical Evidence**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

A physician's opinion is not binding upon the ALJ, and may be discounted whether or not another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830. When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). In this case, the opinion of Dr. Parayno was contradicted by non-examining physicians, Drs. Salib and

Patterson. Consequently, the ALJ was required to set forth specific and legitimate reasons for rejecting the opinions articulated by Dr. Parayno.

The ALJ summarized the conclusions of Dr. Parayno and explained the weight given to the opinion as follows:

> The mental status examination showed memory, concentration, and attention span were impaired, but judgment and insight were fair. (Exhibit 12F, p. 4) Dr. Parayno diagnosed major depressive disorder, recurrent and severe without psychotic features, and chronic post-traumatic stress disorder and opined the claimant was disabled from the psychiatric evaluation and unable to engage in any substantial gainful activity. (Exhibit 12 F, p.5) On April 7, 2013, Dr. Parayno also submitted a mental residual functional capacity statement with a similar opinion. (Exhibit 13 F)
>
> Under Social Security Ruling (SSR) 96-5p, a finding of disability is an issue specifically reserved to the Commissioner. Nevertheless, in making my decision, I still considered the opinions of Dr. Parayno and gave them little weight because it is not supported by and consistent with the overall medical evidence, which showed fair insight and judgment (Exhibits 7F, p. 10 and 10F, p. 18).

(Doc. 9-3 at 30) Plaintiff argues these reasons do not support the decision to reject the limitations assessed by Dr. Parayno. (Doc. 15 at 15-21)

1. Issue reserved for the Commissioner

The determination of whether a claimant is disabled is reserved for the Commissioner, and statements "by a medical source that [a claimant] is 'disabled' or 'unable to work'" "are not medical opinions." 20 C.F.R. §§ 404.1527(e), 416.927(e). Previously, this Court explained, "[A]n ALJ is not obligated to provide detailed reasons for rejecting a medical expert's opinion regarding the ultimate question of disability." *James v. Astrue*, 2012 U.S. Dist. LEXIS 139929, at * 25 (E.D. Cal. Sept. 27, 2012) (citing *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985)). Dr. Parayno's belief that Plaintiff was "disabled" is clearly a statement "that would direct the determination or decision of disability." See 20 C.F.R. §§ 404.1527(e), 416.927(e). Accordingly, the ALJ's decision to give "little weight" to this statement of Dr. Parayno was proper. However, it does not support the decision to give little weight to the specific limitations identified by Dr. Parayno in the examination findings or mental residual functional capacity assessment.

2. Inconsistencies with the overall record

The Ninth Circuit has determined an opinion may be rejected where there are internal inconsistencies within a physician's report. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595,

603 (9th Cir. 1999). Further, an ALJ may reject limitations "unsupported by the record as a whole." *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010) (citing *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003)).

When an ALJ believes a physician's opinion is unsupported by the objective medical evidence, the ALJ has a burden to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). The Ninth Circuit explained: "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

The ALJ identified two treatment notes in which Plaintiff "showed fair insight and judgment" to support his decision to reject the opinions of Dr. Parayno. (Doc. 9-3 at 26, citing Exh. 7F, p. 10 [Doc. 9-11 at 34] and Exh. 10F, p. 18 [Doc. 9-12 at 19][3]) However, the ALJ does not explain how these findings related to Plaintiff's insight and judgment are inconsistent with the limitations assessed by Dr. Parayno. (*See* Doc. 9-12 at 92) Indeed, Dr. Parayno also opined Plaintiff's insight and judgment were "fair." (*Id.*) Thus, the conclusions of Dr. Parayno related to Plaintiff's insight and judgment were consistent with the treatment notes identified by the ALJ. Dr. Parayno also opined that Plaintiff's "cognitive parameters such as memory, concentration and attention span appeared impaired," despite her fair insight and judgment. (*Id.*)

Because the ALJ failed to identify specific inconsistencies between the opinions of Dr. Parayno and the "overall medical evidence," this reason cannot support the decision to give less weight to the limitations assessed by Dr. Parayno related to Plaintiff's memory, concentration, attention span, and ability to sustain a workday or workweek.[4]

---

[3] Notably, the page identified by the ALJ appears to be incorrect, as the treatment notes on page do not refer to Plaintiff's insight and judgment. However, Exhibit 10F, p. 21 [Doc. 9-12 at 22] includes findings that Plaintiff's judgment and insight were fair, and her attention and concentration were poor.

[4] Defendant identifies additional medical evidence in the record, which the Commissioner argues supports the ALJ's decision to reject Dr. Parayno's opinions. (*See* Doc. 22 at 7-8) However, when evaluating the decision of an ALJ, the reviewing Court "is constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (finding the court erred in affirming the ALJ's decision "based on evidence that the ALJ did not discuss"); *see also Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (the Court is "constrained to review the reasons the

**B. Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Here, the ALJ failed to identify legally sufficient reasons for rejecting the limitations assessed by Dr. Parayno. Therefore, the matter should be remanded for the ALJ to re-evaluate the medical evidence to determine Plaintiff's mental residual functional capacity. *See Moisa* , 367 F.3d at 886.

**CONCLUSION AND ORDER**

For the reasons set forth above, the Court finds the ALJ erred in evaluating the medical evidence, and the decision cannot be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Based upon the foregoing, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

///

///

///

///

ALJ asserts"). Accordingly, the Commissioner is unable to salvage the ALJ's decision with evidence the ALJ did not identify in his decision.

2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Molly Lo and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **July 27, 2017**

**/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE